BRYAN, Judge.
Shirley Cotten, the plaintiff below, appeals from a summary judgment in favor of the defendant, St. Bernard Preparatory School (“St. Bernard”). We reverse and remand.
On April 15, 2005, St. Bernard held an arts-and-crafts festival on its campus in Cullman. Cotten, a vendor of crafts, paid St. Bernard a vendor fee that allowed her to sell her crafts at that festival and went onto St. Bernard’s campus to set up a booth and sell her crafts. Cotten walked between her vehicle and the site of her booth several times to transport items from her automobile to her booth. A sidewalk was located between her automobile and her booth; consequently, Cotten had to cross the sidewalk to transport the items from her automobile. She crossed the sidewalk at various places. After crossing the sidewalk several times without incident, she tripped on an uneven portion of the sidewalk and fell, fracturing her left arm. The fracture required surgical repair.
Cotten sued St. Bernard, alleging that St. Bernard, as the owner of the premises where she was injured, was liable for her injury. Denying liability and asserting various affirmative defenses, St. Bernard moved for a summary judgment and supported its motion with evidence and a brief. As the first ground of its summary-judgment motion, St. Bernard asserted that it was not liable to Cotten because, it said, it had not breached the duty of care it owed Cotten. Specifically, St. Bernard argued that Cotten was on its premises as a licensee rather than as an invitee, that the duty owed by a premises owner to a licensee is to abstain from willfully or wantonly injuring the licensee and to avoid negligently injuring the licensee after discovering a danger to the licensee, and that St. Bernard neither injured Cotten willfully or wantonly nor injured her negligently after discovering a danger to her.
As the second ground of its summary-judgment motion, St. Bernard asserted that it was not liable to Cotten because, it said, the uneven sidewalk over which she tripped was open and obvious. Finally, as the third ground of its summary-judgment motion, St. Bernard asserted that it was not liable to Cotten because, it said, she was guilty of contributory negligence.
*159 Cotton submitted evidence and a brief in opposition to St. Bernard’s summary-judgment motion. Cotten argued that St. Bernard was not entitled to a summary judgment on the ground that she was a mere licensee while she was on its campus because, she said, there was substantial evidence indicating that she was an invitee rather than a mere licensee; specifically, she asserted that a person whose presence on a premises owner’s premises confers a benefit on the premises owner is an invitee rather than a licensee under Alabama law and that her payment of the vendor fee charged by St. Bernard conferred an economic benefit upon St. Bernard. Moreover, she argued that, because she was an invitee, St. Bernard owed her a duty to maintain its premises in a reasonably safe condition and, she said, there was substantial evidence indicating that St. Bernard had breached that duty because, she said, David Capíes, St. Bernard’s maintenance supervisor, had admitted that the uneven sidewalk over which Cotten tripped was a potential trip hazard that he would have repaired if he had discovered it before Cotten tripped over it.
Cotten argued that St. Bernard was not entitled to a summary judgment on the ground that the uneven sidewalk was an open and obvious hazard because, she said, the question whether the uneven sidewalk was an open and obvious hazard was a question of fact that should be determined by the trier of fact. Similarly, Cotten argued that St. Bernard was not entitled to a summary judgment on the ground that she was guilty of contributory negligence because, she said, the question whether she was guilty of contributory negligence was a question of fact that should be determined by the trier of fact.
The trial court held a hearing and announced that it would be ruling in favor of St. Bernard. Cotten filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion before the trial court entered a formal judgment. Thereafter, the trial court entered a written order granting St. Bernard’s summary-judgment motion and denying Cotten’s Rule 59(e) motion. Explaining its rationale for granting St. Bernard’s summary-judgment motion, the trial court stated that “[Cotten] was a business licensee and not an invitee as a matter of law” and that, “[therefore, there was no duty owed to [Cotten] by [St. Bernard].”
Cotten timely appealed to the supreme court, which transferred her appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
“ ‘We review a summary judgment de novo.’ Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002) (citation omitted). ‘Summary judgment is appropriate only when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” ’ Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000) (citations omitted).
‘“In determining whether the non-movant has created a genuine issue of material fact, we apply the “substantial-evidence rule” — evidence, to create a genuine issue of material fact, must be “substantial.” § 12-21-12(a), Ala.Code 1975. “Substantial evidence” is defined as “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Callens v. Jefferson County Nursing Home, 769 So.2d 273, 278-79 (Ala.2000) (footnote omitted). In deciding a motion for a summary judgment, or in reviewing a summary judgment, the court *160 must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party. Bruce v. Cole, 854 So.2d 47 (Ala.2003), and Pitney Bowes, Inc. v. Berney Office Solutions, 823 So.2d 659 (Ala.2001). See Ex parte Helms, 873 So.2d 1139 (Ala.2003), and Willis v. Parker, 814 So.2d 857 (Ala.2001).”
Hollis v. City of Brighton, 885 So.2d 135, 140 (Ala.2004).
Cotten first argues that the trial court erred in holding that, as a matter of law, she was a business licensee rather than an invitee while she was on St. Bernard’s campus. Citing Edwards v. Intergraph Services Co., Inc., 4 So.3d 495 (Ala.Civ.App.2008), Cotten argues that her presence on St. Bernard’s campus conferred a benefit on St. Bernard and, therefore, that she was an invitee rather than a business licensee. In Edwards, this court considered the issue whether Edwards, a police officer, was a licensee or an invitee while he used a gym on the premises of Intergraph Services Company, Inc. Holding that the evidence created a genuine issue of material fact regarding whether Edwards was a licensee or an invitee, we stated:
“ ‘[T]he duty owed by the landowner to a person injured on his premises because of a condition on the land is dependent upon the status of the injured party in relation to the land.’ Christian v. Kenneth Chandler Constr. Co., 658 So.2d 408, 410 (Ala.1995).
“ ‘ “The three classifications of persons coming onto the land are trespasser, licensee, and invitee .... In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that matei'ially or commercially benefited the owner or occupier of the premises.” ’ “Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158, 161 (Ala.1997) (quoting Sisk v. Heil Co., 639 So.2d 1363, 1365 (Ala.1994)). ‘The distinction between a visitor who is a licensee and one who is an invitee turns largely on the nature of the visit which brings the visitor on the premises rather than the acts of the owner which precedes the visitor’s coming.’ Nelson v. Gatlin, 288 Ala. 151, 154, 258 So.2d 730, 733 (1972), overruled on other grounds by Standifer v. Pate, 291 Ala. 434, 436, 282 So.2d 261, 263 (1973). ‘One who enters the land of another, with the landowner’s consent, to bestow some material or commercial benefit upon the landowner is deemed an invitee of the landowner.’ Davidson v. Highlands United Methodist Church, 673 So.2d 765, 767 (Ala.Civ.App.1995). See also Restatement (Second) of Torts § 332 (1965):
“ ‘(1) An invitee is either a public invitee or a business ■visitor.
“ ‘(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
“ ‘(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings of the possessor of the land.’
“ ‘On the other hand, a person who enters the land of another with the landowner’s consent or as the landowner’s guest, but without a business purpose, holds the legal status of a licensee.’ Davidson v. Highlands United Methodist Church, 673 So.2d at 767. See also Restatement (Second) of Torts § 330 (1965) (stating that ‘[a] licensee is a person who is privileged to enter or remain *161 on land only by virtue of the possessor’s consent’).
“ ‘A landowner owes an invitee a duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn the invitee of defects and dangers that are known to the landowner but are unknown or hidden to the invitee; a landowner owes a licensee a duty to abstain from willfully or wantonly injuring the licensee and to avoid negligently injuring the licensee after the landowner discovers a danger to the licensee.’
“Prentiss v. Evergreen Presbyterian Church, 644 So.2d 475, 477 (Ala.1994).
“Intergraph maintains that Edwards was a licensee because, it says, it allowed Edwards and the other members of the Madison S.W.A.T. team to train in Intergraph’s gym merely ‘as a courtesy’; it insists that the police officers’ being on the premises conferred no material benefit on Intergraph. Edwards contends that he was an invitee because, he says, Intergraph allowed the members of the Madison S.W.A.T. team to use its gym facilities with the expectation of a material benefit. In support of that contention, Edwards submitted his own affidavit, which states, in pertinent part:
“ ‘[Wjhile the Defendant Intergraph has allowed City of Madison Police personnel and other police departments’ personnel to utilize their gym facilities, this has always provided a material benefit to the Defendant In-tergraph Services Company, Inc. I have talked to Angelo Azzarello on different occasions about why City of Madison police personnel and other officers from other police departments use the Defendant Intergraph’s gym and facilities. Mr. Azzarello told me that Intergraph wanted police officers like me present at Intergraph and in its gym to prevent or discourage trouble that may arise in Intergraph’s gym or on its premises. He said that police officers drive their patrol cars to Intergraph and otherwise maintain a highly visible profile while working out at the gym. Mr. Azzarello even informed me that he appreciated the City of Madison police and me coming to the gym to work out because he had had trouble from certain people at his gym and the presence of the police helped prevent trouble from occurring.
“ ‘Additionally, other Intergraph employees have approached me while I have worked out at Intergraph’s gymnasium to thank me and tell me how much they appreciate me and other police officers working out at the gym. The Intergraph employees have informed me that there had been people who had caused trouble and that the presence of police officers from the City of Madison and other departments made them feel safe and also helped to prevent trouble and incidents from occurring.
“ ‘Also, on several occasions while I was working out at Intergraph’s gym, I had Intergraph personnel approach me to inform me of suspicious activity and would ask me to investigate. Mr. Azzarello has even approached me to investigate a person at the gym whom he suspected to be intoxicated. On another occasion, I broke up a fight between two Intergraph employees and helped escort them off the gym premises.
“ ‘Additionally, during the years that I worked out at Intergraph’s gym, I have known Intergraph to have only one security guard to work on duty during a shift at the whole facility at any one time.
*162 “ ‘It is a common occurrence for businesses in the community to invite police officers into their stores, restaurants and other establishments to keep a police presence to help prevent crime or other problems from occurring.’
“Intergraph submitted no evidentiary material to refute Edwards’s affidavit.
“ ‘As a general rule, the question whether a plaintiff is a licensee or is an invitee is factual, and should therefore be resolved by the trier of fact.’ Walker v. Mitchell, 715 So.2d 791, 793 (Ala.Civ.App.1997). However, if the facts surrounding the plaintiffs entry onto the defendant’s premises are not in dispute, then the question becomes one of law. See Ingram v. Akwell Indus., Inc., 406 So.2d 897, 899 & n. 1 (Ala.1981) (stating that ‘the cumulative effect of the totality of the circumstances ... leaves no factual issue to be resolved [as to the] legal status’ of the plaintiff).
“The allegations of Edwards’s affidavit indicate that Intergraph benefited from having police officers on its premises because the presence of the police tended to discourage criminal activity and to make the Intergraph employees feel safe. Those allegations permit the inference that Intergraph allowed the police officers to use its gym facilities with the expectation of receiving such benefits. Although we do not hold that Edwards was an invitee as a matter of law, we conclude that Edwards presented substantial evidence creating a genuine issue of material fact as to whether he was an invitee.”
4 So.3d at 500-502.
In the case now before us, Father Marcus J. Voss, the president of St. Bernard, testified that St. Bernard used the fees it collected from Cotten and the other vendors to purchase advertising in order to attract members of the public to the festival. St. Bernard asks the members of the public who come to the festival to make a donation upon entering the festival. In addition, St. Bernard sells raffle tickets and food to the members of the public who come to the festival. In April 2005, attendance at the festival resulted in donations totaling $38,901, food sales totaling $24,613, and raffle-ticket sales totaling $43,172. At the very least, the evidence indicating that Cotten paid a fee for the privilege of selling her crafts at the festival and that the fee she paid was used to purchase advertising in order to generate revenue for St. Bernard creates a genuine issue of material fact regarding whether Cotten was an invitee. See Edwards, supra. Accordingly, the trial court erred in holding that, as a matter of law, Cotten was a mere licensee.
Because a genuine issue of material fact exists regarding whether Cotten was an invitee, a genuine issue of material fact necessarily exists regarding whether the duty owed by St Bernard to Cotten was the duty a premises owner owes to an invitee or the one a premises owner owes to a licensee. Father Voss testified that, during his walks across the campus, he had never seen the uneven sidewalk that caused Cotten to trip. Capíes, the maintenance supervisor for St. Bernard, testified that, from time to time, tree roots growing under the sidewalk on St. Bernard’s campus cause shifts in the level of parts of the sidewalk. He further testified that the uneven sidewalk that caused Cotten to trip was a potential trip hazard and that he would have repaired it if he had discovered it before Cotten tripped over it. Cotten testified that she did not see the uneven sidewalk before she tripped over it. Considered together, this testimony created a genuine issue of material fact regarding whether the uneven sidewalk was an open *163 and obvious hazard. See Harley v. Bruno’s Supermarkets, Inc., 888 So.2d 525, 526-27 (Ala.Civ.App.2004). Consequently, we cannot affirm the summary judgment in favor of St. Bernard on the ground that the uneven sidewalk was, as a matter of law, an open and obvious hazard.
Moreover, the question whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact to be determined by the trier of fact. See Hannah v. Gregg, Bland & Berry, Inc., 840 So.2d 839, 860-61 (Ala.2002). In Hannah, the supreme court stated:
“The question of contributory negligence is normally one for the jury. However, where the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law. Brown [v. Piggly-Wiggly Stores, 454 So.2d 1370, 1372 (Ala.1984) ]; see also Carroll v. Deaton, Inc., 555 So.2d 140, 141 (Ala.1989).
“To establish contributory negligence as a matter of law, a defendant seeking a summary judgment must show that the plaintiff put himself in danger’s way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred. See H.R.H. Metals, Inc. v. Miller, 833 So.2d 18 (Ala.2002); see also Hicks v. Commercial Union Ins. Co., 652 So.2d 211, 219 (Ala.1994). The proof required for establishing contributory negligence as a matter of law should be distinguished from an instruction given to a jury when determining whether a plaintiff has been guilty of contributory negligence. A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care. We protect against the inappropriate use of a summiary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to establish by undisputed evidence a plaintiff’s conscious appreciation of danger. See H.R.H. Metals, supra.”
840 So.2d at 860-61 (emphasis added).
In the case now before us, there was no evidence indicating that Cotten had a conscious appreciation of the danger at the moment the incident occurred. Moreover, her testimony indicated that she did not see the uneven sidewalk before she tripped over it and, therefore, that she had no conscious appreciation of the danger it posed. Accordingly, we cannot affirm the summary judgment in favor of St. Bernard on the ground that Cotten was guilty of contributory negligence as a matter of law.
For the reasons discussed above, we reverse the summary judgment in favor of St. Bernard and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMAS, J., concurs.
MOORE, J., concurs in the result, without writing.
THOMPSON, P.J., dissents, with writing, which PITTMAN, J., joins.